Michael S. Hiller (MH9871)
Paul M. Kampfer (PK9186)
**HILLER, PC**
*Attorneys for Plaintiff*
641 Lexington Avenue, 29th Floor
New York, New York 10022
(212) 319-4000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                          :
DIMITRA DIMOPOULOU,                                       :
                                                          :      Civ. Case No.: 1:13-cv-07159
                              Plaintiff,                  :
                                                          :
          -against-                                       :
                                                          :
FIRST UNUM LIFE INSURANCE                                 :
COMPANY, UNUM LIFE INSURANCE                              :
COMPANY OF AMERICA,                                       :
BLACKSTONE ADMINISTRATIVE                                 :
SERVICES PARTNERSHIP, L.P., and                           :
BLACKSTONE ADMINISTRATIVE                                 :
SERVICES PARTNERSHIP,                                     :
L.P. HEALTH & WELFARE PLAN,                               :
                                                          :
                              Defendants.                 :
                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR A FINAL AWARD OF LEGAL FEES, COSTS AND PRE-JUDGMENT INTEREST**

# HILLER, PC

*Attorneys for Plaintiff*
641 Lexington Avenue, 29th Floor
New York, New York 10022
(212) 319-4000

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF RELEVANT FACTUAL AND PROCEDURAL HISTORY . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

POINT I:      LEGAL FEES, INTEREST AND COSTS SHOULD BE
AWARDED TO DIMITRA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        A.      THE GRANT OF BENEFITS IN RESPONSE TO A
POST-REMAND ADMINISTRATIVE APPEAL
CONSTITUTES A SUFFICIENT "DEGREE OF
SUCCESS" TO AWARD LEGAL FEES AND  COSTS . . . . . . . . . . . . . . 5

        B.      THE FIVE FACTORS ENUNCIATED IN *CHAMBLESS*
CONFIRM DIMITRA'S ENTITLEMENT TO LEGAL FEES
AND COSTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

              1.    *The First Chambless Factor – the Degree of Unum's Culpability –
Weighs in Favor of Granting Fees and Costs* . . . . . . . . . . . . . . . . . . . . . . 9

              2.    *The Second Chambless Factor – Ability To Satisfy An Award of
Attorneys' Fees and Costs – Favors the Grant of Fees and Costs* . . . . . . . 13

              3.    *The Third Chambless Factor -- that An Award Of Attorneys' Fees
Would Deter Others From Acting Similarly – Favors an Award of
Fees and Costs* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

              4.    *The Fourth Chambless Factor -- the Merits -- Favor An Award of
Fees and Costs* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

              5.    *The Fifth Chambless Factor -- that the Action has Conferred A
Common Benefit to Others – Favors an Award of Fees and Costs* . . . . . . . 15

POINT II:     DIMITRA IS ENTITLED TO AN AWARD OF LEGAL FEES IN
THE AMOUNT OF $337,875.50 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        A.      HPC'S HOURLY RATES ARE REASONABLE . . . . . . . . . . . . . . . . . . . 17

        B.      THE NUMBER OF HOURS EXPENDED BY HPC IS
REASONABLE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

POINT III:    THE COURT SHOULD AWARD $2,694.95 IN COSTS . . . . . . . . . . . 21

POINT IV:     DIMITRA IS ENTITLED TO PRE-JUDGMENT INTEREST
                     AT 9% FOR A TOTAL OF $396,462.66 . . . . . . . . . . . . . . . . . . . . . . . . . .  21

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Pages**

*Algie v. RCA Global Communications, Inc.,*
891 F. Supp. 875 (S.D.N.Y. 1994),
*aff'd.,* 60 F.3d 956 (2d. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

*Alfano v. CIGNA Life Ins. Co.,*
2009 WL 890626 (S.D.N.Y. Apr. 2, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22, 23, 24

*Alternative Care Systems v. Metropolitan Life Ins. Co.,*
1996 WL 67737 (S.D.N.Y. Feb. 16, 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

*Anita Founds., Inc. v. ILGWU Nat'l. Ret. Fund,*
902 F.2d 185(2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

*Arbor Hill Concerned Citizens Neighborhood Ass'n. v. County of Albany,*
522 F.3d 182 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17, 18

*Badalamenti v. Country Imp. Car Corp.,*
2015 WL 1862854 (E.D.N.Y. Apr. 23, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

*Barbu v. Life Ins. Co. Of North America,*
2015 WL 778325(E.D.N.Y. Feb. 24, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

*Barrett v. Hartford Life and Acc. Ins. Co.,*
2012 WL 6929143 (S.D.N.Y. Nov. 9, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

*Bate v. Berryhill,*
2020 WL 728784 (S.D.N.Y. Feb. 13, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

*Bazignan v. Team Castle Hill Corp.,*
2015 WL 1000034 (S.D.N.Y. Mar. 5, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

*Benson v. Continental Cas. Co.,*
592 F.Supp.2d 1274 (C.D. Cal. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

*Birmingham v. SoGen-Swiss Int'l. Corp. Ret. Plan,*
718 F.2d 515 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

*Blanchard v. Bergeron,*
489 U.S. 87 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

*Bricklayers Ins. & Welfare Fund v. Champion Constr. Corp.,*
2013 WL 4547513 (E.D.N.Y. June 13, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

*Brown v. Unum Life Ins. Co. of America*,
356 F.Supp.3d 949 (C.D. Cal. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Burke v. Kodak Retirement Income Plan*,
336 F.3d 103 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Chambless v. Masters, Mates & Pilots Pension Plan*,
815 F.2d 869 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8, 16

*Christoff v. Unum Life Ins. Co. of America*,
2019 WL 4757884 (D. Minn. Sept. 30, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Clark v. Unum Life Ins. Co. of America*,
2018 WL 4931935 (M.D.Tenn Oct. 10, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Cohen v. Metropolitan Life Ins. Co.*,
2007 U.S. Dist. LEXIS 86099 (S.D.N.Y. Nov. 21, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Davis v. New York City Housing Auth.*,
2002 WL 31748586 (S.D.N.Y. Dec. 6, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Dawes v. First Unum Life Ins. Co.*,
1992 WL 350778 (S.D.N.Y. Nov. 13, 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Densnup v. Unum Life Ins. Co. of America*,
2018 WL 6478886 (D. Utah Dec. 10, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Doe v. Unum Life Ins. Co. of Am.*,
2016 WL 335867 (S.D.N.Y. Jan. 28, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 17

*Doe v. Unum Life Ins. Co. of Am.*,
2016 WL 749886 (S.D.N.Y. Feb. 23, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Donachie v. Liberty Life Assur. Co.*,
745 F.3d 41 (2d Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8

*Duarte v. Aetna Life Ins. Co.*,
2016 WL 11505593 (C.D. Cal. Sept. 29, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Dunda v. Aetna Life Insurance Company*,
2016 WL 4831962 (W.D.N.Y. Sept. 15, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Dunnigan v. Metropolitan Life. Ins. Co.*,
277 F.3d 223, 229 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

iv

*Epright v. Environmental Resources Mgt., Inc. Health and Welfare Plan,*
81 F.3d 335 (3d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Fleming v. Unum Life Ins. Co. of America,*
2018 WL 6133859 (C.D. Cal. Nov. 20, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Fotta v. Trustees of the United Mine Workers,*
165 F.3d 209, 213 (3d Cir.1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Gross v. Sun Life Assur. Co.,*
763 F.3d 73 (1st Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Hangarter v. Paul Revere Life Ins. Co.,*
236 F. Supp. 2d 1069 (N.D. Ca. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Hannon v. Unum Life Ins. Co. of America,*
988 F.Supp.2d 981 (S.D.Ind. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

*Hardt v. Reliance Standard Life Ins. Co.,*
560 U.S. 242 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Hatfield v. Blue Cross & Blue Shield of Mass.,*
162 F.Supp.3d 24 (D. Mass. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Hayden v. Blue Cross & Blue Shield of Tex.,*
2012 WL 13020820 (D.N.D. Oct. 23, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Henar v. First Unum Life Ins. Co.,*
2002 WL 31098495 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hensley v. Eckerhart,*
461 U.S. 424 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 16

*Jaffee v. Redmond,*
518 U.S. 1 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Johnson v. Prudential Ins. Co. of Am.,*
2008 WL 901526 (S.D. Tex. March 31, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Jones v. UNUM Life Ins. Co. of America,*
223 F.3d 130 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Juliano v. The Health Maintenance Org. of New Jersey, Inc.,*
2001 U.S. Dist LEXIS 17140 (S.D.N.Y. Sep. 24, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

v

*Kansas v. Colorado,*
533 U.S. 1 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Kerin v. USPS,*
218 F.3d 185 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

*LeBlanc-Sternberg v. Fletcher,*
143 F.3d 748 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Leva v. First Unum Ins. Co.,*
1999 WL 294802 (S.D.N.Y. May 11, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Levitian v. Sun Life Health and Ins. Co.,*
2013 WL 3829623 (S.D.N.Y. July 24, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Lijoi v. Cont. Cas. Co.,*
414 F.Supp.2d 228 (E.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9, 16

*Local Union No. 97, IBEW v. NRG Energy, Inc.,*
2009 WL 1310565 (N.D.N.Y. May 8, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Locher v. UNUM Life Ins. Co. of America,*
389 F.3d 288 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 14

*Luciano v. Olsten Corp.,*
109 F.3d 111 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Luu v. First Unum Life Insurance Company,*
2019 WL 130261 (C.D. Cal. March 15, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Magnuson v. Newman,*
2014 WL 3767006 (S.D.N.Y. July 31, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Mendez* v. *TIAA-CREF,*
982 F.2d 783 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

*Merrick v. Paul Revere Life Ins. Co.,*
594 F. Supp. 2d 1168 (D. Nev. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Mikrut v. UNUM Life Ins. Co. of Am.,*
2006 WL 3791417 (D.Conn. Dec. 21, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Miller v. United Welfare Fund,*
72 F.3d 1066 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

*Mondolo v. Unum Life Ins. Co. of Am.,*
2013 WL 179711(C.D. Cal. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

*Morgenthaler v. First Unum Life Ins. Co.,*
2006 WL 2463656 (S.D.N.Y. Aug. 22, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

*Morrison v. Saul,*
2019 WL 6915954 (S.D.N.Y. Dec. 19, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

*Nunez v. Francis Deli Grocery,*
2015 WL 1963630 (S.D.N.Y. Apr. 30, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

*O'Rourke v. Pitney Bowes, Inc.,*
1997 WL 716117 (S.D.N.Y Nov. 17, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

*Paese v. Hartford Life and Accident Ins. Co.,*
449 F.3d 435 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9, 16

*Patrolmen's Benevolent Assn. of the City of New York v. The City of New York,*
2003 WL 21782675 (S.D.N.Y. July 31, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16, 17

*Peterson v. Continental Cas. Co.,*
282 F.3d 112 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

*Quatarino v. Tiffany & Co.,*
166 F.3d 422 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

*Quinones v. 9 E.69th St., LLC,*
132 A.D.3d 750 (2d Dep't. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

*Radford Trust v. First Unum Life Ins. Co. Of America,*
321 F. Supp. 2d 226 (D. Mass. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

*Ray v. Unum Life Ins. Co. of Am.,*
224 F. App'x 772 (10th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

*Rood v. N.Y.S. Teamsters Conference Pension & Ret. Fund,*
39 F. Supp. 3d 241 (N.D.N.Y. Aug. 20, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

*Rote v. Titan Tire Corp.,*
611 F.3d 960 (8th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

*Rozell v. Ross-Holst,*
576 F. Supp. 2d 527 (S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

*Scarangella v. Group Health, Inc.,*
731 F.3d 146 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

*SEC v. First Jersey Securities, Inc.,*
101 F.3d 1450 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   22

*Seal v. John Alden Life Ins. Co.,*
437 F.Supp.2d 674 (E.D. Mich. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

*Seaman v. Memorial Sloan Kettering Cancer Ctr.,*
2010 WL 785298 (S.D.N.Y. Mar. 9, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

*Severstal Wheeling, Inc. Ret. Comm. v. WPN Corp.,*
119 F. Supp. 3d 240 (S.D.N.Y. Aug. 10, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

*Sheehan v. Metro. Life Ins. Co.,*
450 F. Supp. 2d 321 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

*Sheehan v. Metropolitan Life Ins. Co.,*
2005 WL 1020874 (S.D.N.Y. Apr. 29, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

*Slupinski v. First Unum Life Ins. Co.,*
554 F.3d 38 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8, 13, 14, 21

*Solnin v. Sun Life and Health Ins. Co.,*
766 F.Supp.2d 380 (E.D.N.Y. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

*Soucy v. First Unum Life Ins. Co.,*
2011 WL 13047471 (D. Conn. Mar. 17, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

*Spears v. Liberty Life Assurance Company of Boston,*
2019 WL 4766253 (D. Conn. Sept. 30, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

*Stephan v. Unum Life Ins. Co. of America,*
697 F.3d 917 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

*Taaffe v. Life Ins. Co. Of North America,*
769 F. Supp. 2d 530 (S.D.N.Y. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21-22, 23

*Texas State Teachers Ass'n. v. Garland Indep. Sch. Dist.,*
489 U.S. 782 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

*Torgeson v. Unum Life Ins. Co. of Am.,*
466 F. Supp 2d 1096 (N.D. Iowa 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

*Veltri v. Building Service 32B-J Pension Fund,*
2004 WL 856329 (S.D.N.Y. Apr. 20, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 14

*Virta v. Desantis Enterprises, Inc.,*
1996 WL 663970 (N.D.N.Y. Nov. 7, 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Wallace v. Grp. Long Term Disability Plan for Emps. of TD Ameritrade Holding Corp.,*
2015 WL 4750763 (S.D.N.Y. Aug. 11, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6

*Younkin v. Prudential Ins. Co. of Am.,*
2007 WL 1378413 (D. Mont. May 3, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Zervos v. Verizon New York, Inc.,*
2002 U.S. Dist. LEXIS 22051 (S.D.N.Y. Nov. 13, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## Statutes

ERISA §502(g)(1) (29 U.S.C. §1132(g)(1)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

29 C.F.R. 2560.503-1(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

29 C.F.R. §2560.503-1(g)(1)(iv) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

29 C.F.R. §2560.503-1(h)(3)(v) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

29 C.F.R. §2560.503-1(h)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

N.Y. CPLR 4507 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

N.Y. CPLR 4508 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

N.Y. CPLR 5004 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Federal Rules of Evidence 501 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

This Memorandum of Law is submitted on behalf of Dimitra Dimopoulou, plaintiff in the above-captioned action ("Dimitra"), and in support of her Motion for a Final Award of Legal Fees, Costs, and Pre-Judgment Interest ("Motion").[1]

## STATEMENT OF THE CASE

Ten years ago, Dimitra earned her dream job at the world-renowned private equity firm, Blackstone, having advanced from the steno-pool to the executive ranks. In a story that is the stuff of movie scripts, Dimitra's achievement was nothing short of extraordinary. However, less than a year after obtaining her dream promotion, Dimitra contracted a virus, which developed into CFS, Fibromyalgia and an assortment of other disabling conditions (collectively, the "Conditions"). The Symptoms of her Conditions were (and are) so severe that, despite having reached the pinnacle of her success, she had no choice but to go out on disability. Thus, in February 2010, Dimitra applied for and was granted disability benefits by her disability insurer and plan administrator, Unum.

An avid outdoor enthusiast and marathon runner, Dimitra was determined to return to work. Against her physician's advice, she returned to work four months later, only to falter due to a physical inability to perform the work. As confirmed by her supervisor at Blackstone, Dimitra was too disabled to continue. Her physicians all confirmed that Dimitra had no choice but to stop working. Unfortunately, Dimitra was in her 30s at the time. And a permanent disability for a woman in her 30s, with a benefit stream payable to age 65, constitutes an extremely expensive proposition to Unum, which denied Dimitra's recurrent LTD Claim without even examining her.

After an administrative appeal, a lawsuit, the grant of a Remand Order, an Interim Legal Fees Award, and the submission of both a Post-Remand Claim and Post-Remand Appeal, Unum finally

---

[1] Hereinafter, we rely upon the same abbreviations and other capitalized terms defined in the Affidavit of Michael S. Hiller, submitted herewith ("Hiller Affidavit" or cited as "Hiller Aff."). Exhibits referenced herein refer to those attached to the Hiller Affidavit.

realized that its position not only lacked any merit; it was completely indefensible.  Accordingly, Unum has finally paid Dimitra's back LTD Benefits, retroactive to November 30, 2010.  During the last 9+ years, Unum has had the benefit of Dimitra's money – nearly a million dollars – and generated annual profits at an average rate of 9.76%, while Dimitra incurred $337,875.50 in legal fees and $2,694.95 costs.

By this Motion, Dimitra seeks to recover her legal fees, costs and pre-judgment interest.  As demonstrated below, Dimitra is entitled to all of this relief.  Regarding her request for legal fees, Dimitra, under ERISA (which governs the claims in this action), is entitled to legal fees as long as she can demonstrate that she has obtained "some degree of success" in the action.  As demonstrated herein and in the accompanying Hiller Affidavit, Dimitra obtained, not merely "*some* degree" of success; other than the relief she seeks by this Motion, Dimitra has obtained *all* of the relief she requested, based upon the precise grounds set forth in her Complaint.  Specifically, in 2016, Dimitra obtained a ruling (the Remand Order) that Unum had denied her LTD Claim arbitrarily and capriciously, in violation of the Plan and without regard to evidence in the record.  In February 2017, Dimitra was awarded interim legal fees.  On February 28, 2020, Dimitra received a Benefits Award Letter from Unum, confirming her entitlement to her LTD Benefits retroactive to November 30, 2010.  And on or about March 26, 2020, Dimitra received all of her back LTD Benefits – $944,420.66 – which Unum wrongfully withheld from her for the last 9+ years.  This is precisely the relief that Dimitra sought in her Complaint (Ex. 1).  Having obtained, not only "some degree"of success, but the precise success she sought when she commenced this lawsuit, her entitlement to legal fees is clear (Point I(A), *infra*).  When a claimant prevails on an administrative appeal following a court-ordered remand – precisely what occurred here – she is entitled to recover legal fees for the work performed by counsel during the court-ordered remand (*Id.*).

As further demonstrated below, the amount of requested legal fees and costs herein is reasonable.  In calculating the requested amounts, Dimitra was charged at HPC's standard hourly rates.

Such rates are fully commensurate with (and, in many respects, lower than) the rates charged by other legal professionals with similar ERISA expertise.  In 2017, this Court reviewed HPC's rates in the context of Dimitra's Application for an Interim Award of Legal Fees and found them to be reasonable. HPC's rates increased by 4% per year over the last three years, with the most recent increase going into effect in January 2020; however, on this Motion, HPC requests legal fees at its _historical_ rates as of December 2019, rather than its current rates (even though the case law permits recovery at _current_ rates). As reflected in the Hiller Affidavit, HPC's rates have never been reduced on a single fee application since the law firm was established.  Regarding the time devoted to the work and the other factors that Courts consider on fee applications filed under ERISA, they all weigh in favor of granting Dimitra's legal fees in full.  Indeed, as reflected below, the total legal fees sought on this application represent less than 10% of Dimitra's expected recovery herein and in connection with her LTD Claim -- far less than what would typically be expected in a labor-intensive litigation such as this one.  And, as for the costs, the modest amount requested ($2,694.95), relative to the total value of the LTD Claim ($2.8 Million) and legal work performed, coupled with the undisputed fact that HPC did not up-charge any such costs, warrants that all expenses be reimbursed in full (Point III, _infra_).

Lastly, Dimitra is entitled to pre-judgment interest in the amount of nine (9%) percent per annum, totaling $396,462.41.  The reasons for this conclusion are manifold.  _First_, Unum's award, issued retroactively to November 30, 2010, reflects that Unum does not deny Dimitra's entitlement to LTD Benefits from the very inception of her LTD Claim; thus, she is entitled to pre-judgment interest. For Unum to argue otherwise would constitute a request by Unum to receive the benefit of withholding monies that Unum now acknowledges always belonged to Dimitra.  _Second_, as further shown below, computation of the proper rate for pre-judgment interest is determined on a case-by-case basis, taking into account the particular circumstances of each dispute, always with an eye on preventing either party

from receiving a windfall at the other party's expense.  Here, the record confirms that Unum, while wrongfully withholding Dimitra's LTD Benefits, generated an average annual profit thereon in the amount of 9.76%.  Meanwhile, the S&P 500 grew at an annual rate of over 13.5% during the same period.  Granting Dimitra 9% pre-judgment interest would not constitute a "windfall" to her, but rather would reimburse merely a portion of the return to which she might have been able to obtain had she been afforded the opportunity to invest the LTD Benefits to which she has always been unquestionably entitled.  To grant Dimitra any amount less than 9% pre-judgment interest would be to allow _Unum_ to receive a windfall at her expense from its wrongful (or at best from Unum's perspective, mistaken) decision to withhold her LTD Benefits.  And federal law is clear that wrongdoers should never benefit from their own wrongdoing, even if unintentional.  Accordingly, Dimitra is entitled to pre-judgment interest at 9%, equaling $396,462.41 (Point IV, _infra_).

For these and the reasons set forth below and in the Hiller Affidavit, Dimitra is entitled to legal fees in the amount of $337,875.50, costs in the amount of $2,694.95, and pre-judgment interest in the amount of $396,462.41.

## STATEMENT OF RELEVANT FACTUAL AND PROCEDURAL HISTORY

For purpose of brevity, we respectfully refer the Court to the Affidavit of Michael S. Hiller, submitted herewith, for a statement of the factual and procedural history of this action.

## ARGUMENT

## POINT I:    LEGAL FEES, INTEREST, AND COSTS SHOULD BE AWARDED TO DIMITRA

ERISA §502(g)(1) (29 U.S.C. §1132(g)(1)) provides for an award of attorneys' fees and costs in ERISA actions.  In this regard, §502(g)(1) states:

> In any action under this title (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow reasonable attorney's fee and costs of action to either party.

4

The Courts have made clear that "ERISA's attorney's fee provisions must be liberally construed to protect the statutory purpose of vindicating retirement rights, even when small amounts are involved."[2] "An award of attorney's fees also provides the necessary incentive for counsel to take on difficult cases."[3] And an award of fees "will further the purposes of ERISA, protect other beneficiaries from incomplete claim reviews, and hopefully prevent the wrongful denial of claims ..." *Id.*

As shown below: (A) an award of LTD Benefits in response to a post-remand appeal constitutes a substantial degree of success on the merits and thus warrants an award of attorneys' fees, and (B) while not necessary for the Court to award attorneys' fees, the five factor test enunciated in the seminal decision *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871-72 (2d Cir. 1987) provides for the grant of an award of legal fees and costs here.

## A.    THE GRANT OF BENEFITS IN RESPONSE TO A POST-REMAND ADMINISTRATIVE APPEAL CONSTITUTES A SUFFICIENT "DEGREE OF SUCCESS" TO AWARD LEGAL FEES AND COSTS

All that is required for an award of attorneys' fees and costs in an ERISA action is a showing of "some degree of success" on the merits; the Court need not consider any other factor.[4] Indeed, "courts in this Circuit routinely award legal fees to prevailing plaintiffs in ERISA actions based solely upon their achieving some degree of success on the merits."[5] In fact, a plan beneficiary need not even

---

[2] *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871-72 (2d Cir. 1987).

[3] *Hayden v. Blue Cross & Blue Shield of Tex.*, 2012 WL 13020820, at *13 (D.N.D. Oct. 23, 2012).

[4] *Donachie v. Liberty Life Assur. Co.*, 745 F.3d 41, 47 (2d Cir. 2014) (*citing Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 254-55 (2010)); *Doe v. Unum Life Ins. Co. of Am.*, 2016 WL 335867, at *1 (S.D.N.Y. Jan. 28, 2016) (legal fees granted); *see also Kerin v. USPS*, 218 F.3d 185, 189 n.1 (2d Cir. 2000) (*quoting Texas State Teachers Ass'n. v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791-92 (1989)) (a plan beneficiary may be awarded legal fees if she "has 'succeeded on *any* significant issue in litigation which achieved some of the benefit the party sought in bringing suit,' such that the party is able to 'point to a resolution of the dispute which changes the legal relationship between itself and the [adversary]'") (emphasis in original).

[5] *Doe*, 2016 WL 335867, at *1 (report and recommendation, awarding legal fees), *adopted in pertinent part and rejected in part*, 2016 WL 749886 (S.D.N.Y. Feb. 23, 2016) (*citing  Wallace v. Grp. Long Term Disability Plan for*

recover past benefits or reinstatement to qualify as a prevailing party for purposes of a fee-shifting statute;[6] nor does ERISA require a finding that the plan administrator acted in bad faith.[7] Rather, ERISA plaintiffs are entitled to awards of legal fees "if they succeed on *any significant issue in litigation* which achieves *some of the benefit* the parties sought in bringing suit."[8]

Here, there is no question that Dimitra obtained "some degree of success" on the merits. After a lengthy, court-ordered remand, which included both a post-remand claim and administrative appeal, Unum approved Dimitra's LTD Claim, thereby conceding that she has been totally disabled under her Policy since 2010 (Dkt. No. 160). In doing so, Unum has finally paid Dimitra her retroactive LTD Benefits, and also agreed to pay her LTD Benefits going forward provided she remains disabled. As such, Dimitra, other than the relief requested on this Motion, has obtained the exact relief she sought when she filed her Complaint approximately six and a half years ago on October 9, 2013.

Indeed, as reflected in the Hiller Affidavit and the Exhibits annexed thereto, Dimitra's claims herein were fully vindicated, insofar as the Court issued rulings that validated the allegations of the Complaint (*see* Hiller Aff. ¶¶10-12). It is difficult to conceive of a more complete victory on the merits than was obtained herein. Consequently, Dimitra is entitled to an award of attorneys' fees and costs.

Furthermore, the Second Circuit has made clear that plaintiffs, after obtaining a degree of

---

*Emps. of TD Ameritrade Holding Corp.*, 2015 WL 4750763 at *5-7 (S.D.N.Y. Aug. 11, 2015) (obtaining a remand for further consideration of whether plaintiff's condition was disabling was sufficient success on the merits to support an award of attorneys' fees without considering other factors); and *Badalamenti v. Country Imp. Car Corp.*, 2015 WL 1862854 at *5 (E.D.N.Y. Apr. 23, 2015) (declining to consider *Chambless* factors).

[6]*Sheehan v. Metro. Life Ins. Co.*, 450 F. Supp. 2d 321, 325 (S.D.N.Y. 2006).

[7]*See, e.g., Hatfield v. Blue Cross & Blue Shield of Mass.*, 162 F.Supp.3d 24, 44-45 (D. Mass. 2016) (order of remand warranted the grant of legal fees notwithstanding the absence of evidence of bad faith: "Even in the absence of bad faith, of which there is no evidence here, this, 'at a minimum does not weigh against some award of attorneys' fees'") (*citing Gross v. Sun Life Assur. Co.*, 763 F.3d 73, 83 (1st Cir. 2014) (grant of legal fees after Court issued an order remanding the claimant's disability claim for further review)).

[8]*Sheehan*, 450 F. Supp. 2d at 325 (*citing Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (emphasis added).

6

success pursuant to court-ordered remand proceedings (as occurred here), are entitled to attorneys' fees

and costs for the work performed. *Peterson v. Continental Cas. Co.*, 282 F.3d 112 (2d Cir. 2002). As the

Second Circuit ruled in *Peterson*:

> [W]e see no reason that a party may not recover costs incurred during an administrative
> remand ordered by a court. As demonstrated above, the text and legislative history
> indicate that once a court of law has assumed jurisdiction over a suit, all costs incurred
> may be shifted by a court to one party. The fact that a court orders additional fact
> finding or proceedings to occur at the administrative level does not alter the fact that
> those proceedings are part of the "action" as defined by ERISA. Where the
> administrative proceedings are ordered by the district court and where that court retains
> jurisdiction over the action during the pendency of the administrative proceedings, we
> hold that ERISA authorizes the award of associated costs (*Id.* at 122[9]).

Here, the Court directed Dimitra to submit to post-remand administrative review, during which

this Court retained jurisdiction. The Court exercised its retained jurisdiction repeatedly over the ensuing

4+ years (2016-2020), disposing of a series of legal issues, ranging from the Interim Award of Legal Fees

and Costs in 2017 to the scope of the Post-Remand Claim and Appeal process. Indeed, this Court, in

its July 25, 2018 Order, expressly ruled that the parties would return to Court after the administrative

process was completed, to proceed with motions for summary judgment if necessary (Dkt. No. 149).

In all, the Court considered approximately 24 submissions and rendered at least 14

determinations/orders after the Remand Order of January 2016 (Dkt Nos. 114-161). Plainly, this Court

retained jurisdiction and repeatedly exercised it. Accordingly, Dimitra, whose lawyers obtained a full

victory for her in this litigation, is entitled to recover her legal fees and costs, even in the absence of an

---

[9]Other jurisdictions have adopted the *Peterson* ruling. *See, e.g., Seal v. John Alden Life Ins. Co.*, 437 F.Supp.2d 674, 686 (E.D. Mich. 2006) (awarding legal fees for work performed at the administrative level after a court-ordered remand); *Younkin v. Prudential Ins. Co. of Am.*, 2007 WL 1378413, at *6 (D. Mont. May 3, 2007); *Johnson v. Prudential Ins. Co. of Am.*, 2008 WL 901526, at *10 (S.D. Tex. March 31, 2008) (ordering post-remand legal fees in situation where there was no remand order; instead, the insurer voluntarily agreed to another administrative appeal and paid benefits); *Benson v. Continental Cas. Co.*, 592 F.Supp.2d 1274, 1281 (C.D. Cal. 2009) (same); *Rote v. Titan Tire Corp.*, 611 F.3d 960 (8th Cir. 2010); *Gross*, 763 F.3d 73, 82 (noting that attorneys' fees would be appropriate for work performed during an administrative remand by the court); and *Duarte v. Aetna Life Ins. Co.*, 2016 WL 11505593, at *3 (C.D. Cal. Sept. 29, 2016) (awarding legal fees for post-remand work and noting it does not matter that the court therein did not expressly retain jurisdiction).

analysis of the *Chambless* factors discussed below.[10]

### B.     THE 5-FACTORS ENUNCIATED IN *CHAMBLESS* CONFIRM DIMITRA'S ENTITLEMENT TO LEGAL FEES AND COSTS

Once a showing of success has been made, granting an award of attorneys' fees is appropriate "absent 'some particular justification for not doing so.'"[11]  Although not required as a precondition to an award of legal fees, analysis of the five factors listed in *Chambless*, 815 F.2d at 872 ("Five Factors" or "Five Factor Test") may be undertaken by the Courts to ensure the propriety of the relief requested.[12]

"The five factors are guiding criteria, but the party seeking the award need not establish all five, and no one factor is dispositive."[13]  Nonetheless, the Five Factors are: (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorneys' fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on other plan participants.[14]

---

[10]Notably, the court in *Duarte*, 2016 WL 11505593, at *3, awarded attorneys' fees for post-remand work, noting that it is irrelevant that the court did not expressly retain jurisdiction.

[11]*Donachie*, 745 F.3d at 47 (*quoting Birmingham v. SoGen-Swiss Int'l. Corp. Ret. Plan*, 718 F.2d 515, 523 (2d Cir. 1983)); *see also Scarangella v. Group Health, Inc.*, 731 F.3d 146, 155 (2d Cir. 2013) (ERISA fee provisions "must be liberally construed to protect the statutory purpose of vindicating employee benefits rights").

[12]Although this Court, in its February 3, 2017 Fee Decision (Ex. 3), awarded Dimitra attorneys' fees without consideration of the *Chambless* factors (Dkt. No. 139, p. 3), we nonetheless include such an analysis herein.  We do not want to make any unwarranted assumptions concerning the Court's deliberative process.

[13]*See, e.g., Veltri v. Building Service 32B-J Pension Fund*, 2004 WL 856329, at *2 (S.D.N.Y. Apr. 20, 2004); *Slupinski v. First Unum Life Ins. Co.*, 554 F.3d 38, 47 (2d Cir. 2009) (*citing Locher v. Unum Life Ins. Co. of Am.*, 389 F.3d 288, 298-99 (2d Cir. 2004)) ("failure to satisfy the fifth factor does not preclude an award of fees"); *Mendez* v. TIAA-CREF, 982 F.2d 783, 789 (2d Cir. 1992) (failure to satisfy the fifth factor need not preclude an award of fees); *Anita Founds., Inc. v. ILGWU Nat'l. Ret. Fund*, 902 F.2d 185, 189 (2d Cir. 1990) (failure to satisfy the first factor is not dispositive); *O'Rourke v. Pitney Bowes, Inc.*, 1997WL 716117, at *3-4 (S.D.N.Y. Nov. 17, 1997) (fees awarded without satisfaction of the bad first factor); *Alternative Care Systems v. Metropolitan Life Ins. Co.*, 1996 WL 67737 (S.D.N.Y. Feb. 16, 1996) (*accord*); *Virta v. Desantis Enterprises, Inc.*, 1996 WL 663970, at *5 (N.D.N.Y. Nov. 7, 1996) (fees awarded with no bad faith and no finding of common benefit.

[14]*Miller v. United Welfare Fund*, 72 F.3d 1066, 1074 (2d Cir. 1995) (*citing Chambless*, 815 F.2d at 871).

Although evidence in support of _all_ Five Factors is not required, each Factor, as shown below, favors a final award of legal fees and costs here.

### 1.  The First <u>Chambless</u> Factor – the Degree of Unum's Culpability – Weighs in Favor of Granting Fees and Costs

The culpability requirement of the first _Chambless_ factor is satisfied when the defendant's determination was arbitrary and capricious, or it deprived the plaintiff of a full and fair review.[15]  As reflected _supra_, the record herein confirms that Unum has been guilty of a high degree of culpability. It bears emphasis that this Court, in its Remand Order, ruled that:

- "[First] Unum's decision to deny benefits ... arbitrarily ignored relevant evidence" (Ex. 2, p.11)(Dkt. No. 112);

- Unum relied upon checkmarks on a Disability Status Update form submitted by Dr. Carpenter, but failed to reconcile them with the remainder of the statements contained in the form (_Id._ at 13), as well as the sworn statements from Dr. Carpenter that Dimitra "could not participate in daily employment" (_Id._ at 15);

- "Unum's decision to deny benefits was inconsistent with the plain words of the plan" (_Id._);

- Unum ignored ample evidence of the severity of Dimitra's Symptoms, including the sworn statement of her husband (_Id._);

- Unum was "arbitrary and capricious" to exclude evidence submitted by Dr. Deutsch, as it is indeed relevant as to whether Dimitra suffered from CFS and Fibromyalgia on the date of her claim (_Id._ at 15);

- Unum was "arbitrary and capricious" to discredit evidence of Dimitra's Symptoms because it deemed them "subjective" (_Id._ at 16); and

- Unum was "arbitrary and capricious" to discredit Dimitra's complaints based upon her

---

[15] _See,e.g., Paese v. Hartford Life and Accident Ins. Co._, 449 F.3d 435, 450 (2d Cir. 2006) ("[I]t was entirely appropriate for the district court to consider the degree to which Hartford failed to engage in a fair and open-minded consideration of Paese's claim"); _Locher_, 389 F.3d at 299 (failure to adequately investigate a claim and to base a denial on a doctor's report that lacked a scientific analysis of the medical evidence is culpable conduct); _Lijoi v. Cont. Cas. Co._, 414 F.Supp.2d 228, 249 (E.D.N.Y. 2006) ("Continental surely bears a high level of culpability for ... its failure to credit either of Lijoi's or his doctors' attestations of disability and its failure to consider new evidence submitted on his behalf"); _Veltri_, 2004 WL 856329, at *3 (failure to satisfy the full and fair review requirements is culpable conduct).

attempts at exercise given that "[Dimitra] followed her physician's instructions in an attempt to alleviate her symptoms" (*Id.*).

Unum's culpability continued during the remand process when Unum  issued a determination denying Dimitra's Post-Remand Claim, based upon Unum's Bogus Defenses, without ever examining her (despite the Court's suggestion that Unum conduct such an examination).  In denying her Post-Remand Claim, Unum ignored the overwhelming medical evidence in the record (including blood-test results containing markers consistent with the diagnosis of CFS), plus sworn statements from her: physicians, other health care providers, former employer, and members of her family (Hiller Aff. ¶14).

Worse, Unum issued its Post-Remand denial without including any language pertaining to Dimitra's right to submit a Post-Remand Appeal or a deadline by which such an Appeal must be submitted (Post-Remand Claim Denial, Ex. 6).  Then, unbelievably, Unum argued that the Court should reject her Post-Remand Appeal as untimely and dismiss this action because Dimitra supposedly failed to submit her Post-Remand Appeal within the supposed "deadline" of which Unum had never informed her (Dkt. No. 150) -- a clear violation of ERISA.  *Burke v. Kodak Retirement Income Plan*, 336 F.3d 103, 107-08 (2d Cir. 2003); *Epright v. Environmental Resources Mgt., Inc. Health and Welfare Plan*, 81 F.3d 335, 342 (3d Cir. 1996); 29 C.F.R. §2560.503-1(g)(1)(iv).[16]

After being confronted with controlling precedent confirming that Dimitra's Post-Remand Appeal was timely (Ex. 7), Unum, rather than acknowledging its error, persisted, and, by letter to the Court dated December 20, 2019 (Dkt. No.153), continued its effort to obtain dismissal of Dimitra's clearly meritorious Post-Remand Appeal, requiring undersigned counsel to submit additional

---

[16]The ERISA claim procedure regulations were recently amended with an effective date of April 1, 2018.  Although the new/updated regulations do not change the outcome of the dispute herein, because Dimitra filed her claim for LTD benefits in 2010, the prior version of the regulations apply to this case.  *See Solnin v. Sun Life and Health Ins. Co.*, 766 F.Supp.2d 380, 393 n.1 (E.D.N.Y. 2011).  As such, all references to 29 C.F.R. §2560.503-1 are to the prior version of the regulations in effect at the time Dimitra filed her claim for benefits, and will be referred to as the "ERISA Regulations."

correspondence on the issue (Ex. 8; Dkt. No.154).  Adding insult to injury, Unum, despite having

repeatedly acknowledged that Dimitra's mental and psychological condition is irrelevant to the LTD

Claim, demanded during the Post-Remand Appeal process that she execute an authorization that would

entitle Unum to review psychotherapy notes that are, as a matter of law in New York, privileged.  *See*

N.Y. CPLR 4507 and 4508; Federal Rules of Evidence 501; *Jaffee v. Redmond*, 518 U.S. 1, 10-15 (1996).[17]

Either Unum was using the threat of disclosing embarrassing or otherwise confidential information to

leverage a settlement favorable to Unum or Unum was demanding the records as a subterfuge to extend

the February 28th Post-Remand Appeal Deadline by provoking a litigation dispute to which the Court

would have had no choice but to devote attention over a period of days or weeks.  Either way, the

request for irrelevant and privileged psychotherapy notes was not interposed in good faith.

Still worse, Unum, rather than assigning a new in-house reviewer to examine Dimitra's medical

records, returned the Post-Remand Appeal to the very same in-house reviewer, Scott Norris ("Norris"),

whose shoddy and biased work precipitated the Court's Remand Order and rebuke of Unum for

engaging in arbitrary and capricious decision-making.  It is well established that, when a plan

administrator is called upon to reconsider a claim for long-term disability benefits after a finding of

impropriety, the claim may not be re-sent to the same reviewer who participated in the original denial.

*See* 29 C.F.R. §2560.503-1(h)(3)(v) and h(4) (stating that following an adverse benefit determination, an

administrator must consult an appropriately credentialed physician "who is neither an individual who

was consulted in connection with the adverse benefit determination that is subject of the appeal, nor

the subordinate of any such individual").  *See also*, *Spears v. Liberty Life Assurance Company of Boston*, 2019

WL 4766253, at *50 (D. Conn. Sept. 30, 2019) (explaining that sending a case back to the same peer

---

[17]Furthermore, because Dimitra did not seek her LTD Benefits based on a psychiatric/psychological condition, she did not place her mental condition in issue, and thus, as a matter of law, was never required to produce mental health records.  *Quinones v. 9 E.69th St., LLC*, 132 A.D.3d 750, 751 (2d Dep't. 2015).

reviewer during an appeal "'virtually assured that Spears would not receive a full and fair review' because it is 'nearly inconceivable that ... consultant[s] whose analysis and conclusion has been called into question ... would do anything other than defend that conclusion'").

The reasoning in *Spears*, referenced above, is particularly relevant in this case.  As evidenced by his February 6, 2020 letter to Dimitra's treating infectious disease specialist, Dr. Levine, Norris had no intention of changing his prior opinion (Ex. 13, p. 14-16).  In his letter – sent a mere three weeks before Unum acknowledged that Dimitra's LTD Claim has always been valid -- Norris disclosed that he "did not find definitive support for physical impairment as of 11/30/2010 that would have precluded sedentary work" (*Id.*).  He then unsuccessfully attempted to persuade Dr. Levine to agree with him that the CPET was "not time-relevant" to Dimitra's condition in 2010, and, therefore, supposedly irrelevant to Dimitra's claim (*Id.*).  In other words, Norris and Unum were *still* trying to drum up a justification to deny Dimitra's valid LTD Claim just weeks before finally granting her Post-Remand Appeal.[18]

Lastly, Unum's misconduct *further* continued when, less than two weeks prior to its February 28th Post-Remand Appeal Deadline, Unum requested that Dimitra submit to an 11th hour medical examination ("ME") – one that was both untimely and unnecessary.  Despite having 10 years to have conducted an ME, and despite the Court's specific invitation in the Remand Order to Unum to schedule Dimitra for an ME (Ex. 2, p. 18), Unum consistently "ruled" that it was not necessary as there was sufficient information in the claim file to deny Dimitra's LTD Claim.  Unum then waited over 90 days

---

[18]Notably, as Unum must be aware, the Court's Remand Order was hardly the first case to criticize Norris's file reviews.  *See, e.g., Hannon v. Unum Life Ins. Co. of America*, 988 F.Supp.2d 981, 992 (S.D.Ind. 2013)(finding Norris cherry-picked evidence that supported denial and ignored evidence supporting the claim); *Densnup v. Unum Life Ins. Co. of America*, 2018 WL 6478886, at *10 (D. Utah Dec. 10, 2018)(questioning Norris's opinion for failure to examine or speak with the plaintiff); *Clark v. Unum Life Ins. Co. of America*, 2018 WL 4931935, at *15-16 (M.D.Tenn Oct. 10, 2018) (chastising Norris for selectively reviewing the record); *Fleming v. Unum Life Ins. Co. of America*, 2018 WL 6133859, at *10 (C.D. Cal. Nov. 20, 2018)(criticizing Norris for cherry-picking evidence); *Christoff v. Unum Life Ins. Co. of America*, 2019 WL 4757884, at *9 (D. Minn. Sept. 30, 2019)(*accord*); and *Brown v. Unum Life Ins. Co. of America*, 356 F.Supp.3d 949, 961, 968 (C.D. Cal. 2019) (noting Norris placed too much weight on information not meant to assess vocational capacity).

after Dimitra filed her Post-Remand Appeal and until just two weeks before its February 28th Post-Remand Appeal Deadline was set to expire before requesting an ME. And in the final analysis, Unum essentially conceded that the ME was unnecessary by granting the Post-Remand Appeal without conducting the examination and paying benefits retroactive to November 30, 2010. Plainly, Unum's 11th hour request was pretextual and designed as an attempt to manufacture a reason for an additional extension of time to decide the Post-Remand Appeal or to innoculate itself from criticism for having failed to conduct the ME that the Court suggested might be helpful in 2016, and which Unum should have conducted 10 years ago. In any event, Unum's 11th hour request for an ME was made in bad faith.

In view of the foregoing, Unum's culpability is not only documented by the arbitrary and capricious nature of its pre-remand Determination as detailed in the Court's Remand Order; it is also verified by Unum's Post-Remand misconduct, discussed above.[19] As such, the first *Chambless* factor clearly weighs in Dimitra's favor.

### 2.     The Second *Chambless* Factor – Ability To Satisfy An Award Of Attorneys' Fees and Costs – Favors the Grant of Fees and Costs

The Courts have repeatedly found, and indeed, Unum has not contested, Unum's ability to satisfy fee requests.[20] Furthermore, the records annexed to the Hiller Affidavit confirm that Unum has generated, on average, over $1 Billion per year in profits between 2010 and 2019 (Ex. 20). Plainly, the second *Chambless* factor favors the grant of attorneys' fees and costs.

### 3.     The Third *Chambless* Factor – that an Award Of Attorneys' Fees Would Serve to Deter Others From Acting Similarly – Favors an Award of Fees and Costs

When weighing this factor, Courts consider the deterrent effect that the fee award would have,

---

[19]Indeed, Unum's history of abuse and misconduct is a matter of record as reflected in Dimitra's Summary Judgment Motion (Dkt. No. 89), and will be addressed in our reply papers, if necessary.

[20]*Slupinski*, 554 F.3d at 47-48; *Locher*, 389 F.3d at 299; *see also Mikrut v. UNUM Life Ins. Co. of Am.,* 2006 WL 3791417, at *12 (D.Conn. Dec. 21, 2006).

not only on the particular defendant in the action, but on other administrators.[21]  Here, in the absence

of a substantial fee award, there would be little downside for Unum to continue improperly denying

benefits, since a successful outcome by the plaintiff (without an award of legal fees) would simply

require Unum to pay that which it was required to pay in the first instance.  Thus, in the absence of a

legal fee award, Unum would actually be incentivized to deny as many claims as could be minimally

justified, roll the proverbial dice, and hope that plan beneficiaries are too sick to fight or give up out of

exhaustion and settle for pennies on the dollar.  Under these circumstances, if Unum ultimately were

to lose, the award (absent legal fees) would be the same sum it was obligated to pay in the first instance.

The Courts have recognized the importance of deterring claims administration misconduct, not

only by plan administrators generally, but by Unum in particular.[22]  As explained by the Court in *Leva*:

> The third factor also weighs in favor of a fee award. Unum argues that the concept of
> "deterrence" is not appropriate in the context of a plan administrator's review of a
> claim. I disagree. Unum apparently litigates many of these cases, and in fact it cites
> eleven cases in the Southern and Eastern Districts in which it was apparently sued by
> individuals in the last several years seeking to overturn the denial of benefits. The
> possibility of an attorneys' fee award certainly should give Unum and other insurance
> companies incentive not to deny benefits unless there is a basis to do so (*Id.).*

Moreover, Unum has been sued regularly for engaging in precisely the sort of arbitrary and

capricious decision-making referenced in the Remand Order herein.  By way of example only (as they

are innumerable), Unum has been chastised for ignoring evidence,[23] failing to apply the proper standard

---

[21]*See Veltri*, 2004 U.S. Dist. LEXIS 6834, at *9 ("[A]n award of attorney's fees would provide
incentives for a somewhat less cavalier attitude towards member inquiries in the future"); *Locher*, 389 F.3d at
299 (award of fees would deter similarly inappropriate claims evaluation procedures); *Zervos v. Verizon New
York, Inc.*, 2002 U.S. Dist. LEXIS 22051, at *8 (S.D.N.Y. Nov. 13, 2002) (fee award would deter other plan
administrators from designing appeals processes that arbitrarily/capriciously deny benefits); *Juliano v. The
Health Maintenance Org. of New Jersey, Inc.*, 2001 U.S. Dist LEXIS 17140, *8 (S.D.N.Y. Sep. 24, 2001)(fee award
would deter failures "to provide information to the insureds and their physicians during the claims process").

[22]*Slupinski*, 554 F.3d at 47-48;  *Leva v. First Unum Life Ins. Co.,* 1999 WL 294802 at*1 (S.D.N.Y. 1999).

[23]*Henar v. First Unum Life Ins. Co.*, 2002 WL 31098495, at *5 (S.D.N.Y. Sept. 19, 2002); *Leva*, 1999 WL
294802, *1-2 (S.D.N.Y. May 10, 1999); *see also Ray v. Unum Life Ins. Co. of Am.*, 224 F. App'x. 772, 785 (10th

by which beneficiaries' claims are evaluated,[24] focusing on a plan beneficiary's diagnosis rather than her

ability to work,[25] and failing to follow the notification requirements in the ERISA Regulations (29 C.F.R.

2560.503-1(g)).[26]  These are but a sampling of the many acts of arbitrary and capricious misconduct of

which Unum stands culpable in this action.  And it bears repetition that, in addition to the particular acts

of misconduct referenced herein, Unum has a substantial history of illegally targeting claims for denial

and termination, not based upon the physical condition of the plan beneficiaries who have filed claims,

but upon the cost associated with paying the monies due.  *Stephan*, 697 F.3d at 929; *Mondolo v. Unum Life

Ins. Co. Of Am.,* 2013 WL 179711, at *7 (C.D.Cal. 2013); *Seaman v. Memorial Sloan Kettering Cancer Ctr.*,

2010 WL 785298, at *7 (S.D.N.Y. 2010). Under the circumstances, an award of legal fees and costs

would deter not only plan administrators generally, but Unum in particular, from further misconduct.

### 4.     The Fourth <u>Chambless</u> Factor – the Merits – Favors An Award of Fees and Costs

The merits necessarily favor Dimitra, as set forth in Point I(A) and (B), *supra.*

### 5.     The Fifth <u>Chambless</u> Factor – that the Action has Conferred A Common Benefit to Others – Favors an Award of Fees and Costs

The deterrent effect of attorneys' fees in this case would confer a clear and common benefit

---

Cir. 2007) (affirming the district court's award of long-term disability benefits, finding that Unum ignored significant evidence indicating that plaintiff could not work from home or at a small firm); *Torgeson v. Unum Life Ins. Co. of Am.*, 466 F. Supp 2d 1096, 1132 (N.D. Iowa 2006).

[24]*Stephan v. Unum Life Ins. Co. Of Am.*, 697 F.3d 917, 934 (9th Cir. 2012)("Unum's interpretation of the language of the Plan rests on terms that do not appear in the relevant text" which is contrary to its legal mandate to "ensure that the plan provisions are applied consistently with respect to similarly situated claimants" ); *Soucy v. First Unum Life Ins. Co.*, 2011 WL 13047471 at *29 (D. Conn. Mar. 17, 2011); *Merrick v. Paul Revere Life Ins. Co.,* 594 F. Supp. 2d 1168, 1187 (D. Nev. 2008); *Radford Trust v. First Unum Life Ins. Co. Of Am.*, 321 F. Supp. 2d 226, 244 (D.Mass. 2004); *Hangarter v. Paul Revere Life Ins. Co.*, 236 F. Supp. 2d 1069, 1084 (N.D. Ca. 2002) (the Insurer employed the "round table," and routinely made benefits determinations based upon "net termination ratios," rather than upon the policies or the policyholders' medical conditions).

[25]*Hannon v. Unum Life Ins. Co of Am.*, 988 F. Supp. 2d 981, 990, 992 (S.D. Ind. 2013).

[26]*Lau v. First Unum Life Insurance Company*, 2019 WL 130261 at *7-8 (C.D. Cal. March 15, 2019; *Dawes v. First Unum Life Ins. Co.*, 1992 WL 350778, at *1, 3 (S.D.N.Y. Nov. 13, 1992).

upon other disabled insureds, including those under the Plan and under other plans that Unum markets, sells and administers.[27] Thus, while not necessary to meet all or even any of Five *Chambless* Factors, here they all favor a final award of legal fees and costs.

**POINT II:      DIMITRA IS ENTITLED TO AN AWARD OF LEGAL FEES IN THE AMOUNT OF $337,875.50**

Once a court has determined that an award is warranted, it will assess a "reasonable fee." An assessment of such an award entails a detailed *ad hoc* inquiry into the particular case. *Chambless*, 815 F.2d at 1057-58. The court will begin its analysis by calculating the "lodestar." The lodestar is "based upon the number of hours reasonably expended by counsel on the litigation multiplied by a reasonable hourly rate."[28] In calculating the lodestar, the Court may exclude only those hours it finds to be "excessive, redundant, or otherwise unnecessary."[29]

Once a lodestar is calculated, the district court may consider other factors "that may lead [it] to adjust the fee upward or downward." *Hensley,* 461 U.S. 424. There is, however, a strong presumption that the lodestar figure represents a reasonable fee. *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998). As reflected in the Hiller Affidavit, HPC meticulously maintained time records reflecting every minute devoted to the prosecution of this action. Time was recorded contemporaneously with the work performed, in tenth-of-an-hour intervals or, when the time devoted to work more accurately could be

---

[27] *See Cohen v. Metropolitan Life Ins. Co.*, 2007 U.S. Dist. LEXIS 86099, at *8 (S.D.N.Y. Nov. 21, 2007) ("[A] determination finding fault with an insurer's conduct in an individual action confers a common benefit on a group of plan participants in that the insurer will be deterred from improperly denying benefits under similar circumstances"); *Ljoi*, 414 F.Supp.2d 228, 249 (an award of attorneys' fees serves to bring under scrutiny the application of questionable evaluation practices with respect to illnesses that are difficult to diagnose and treat); *Paese*, 2004 WL 764760, at *10, *aff'd* 449 F.3d 435, 451 (2d Cir. 2006) ("[A] benefit is conferred, in a general sense, on group employee benefit plan participants in that insurers will be deterred from terminating benefits without reason").

[28] *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997)(*citing Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989)).

[29] *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *Patrolmen's Benevolent Assn. of the City of New York v. The City of New York*, 2003 WL 21782675, at *2 (S.D.N.Y. July 31, 2003).

calculated at the quarter hour rather than the tenth of an hour, quarter hour intervals.

Here, $337,875.50 represents a reasonable legal fee because: (A) HPC's hourly rates are reasonable (*i.e.*, prevailing market rates); and (B) the number of hours requested is reasonable.

## A.    HPC's HOURLY RATES ARE REASONABLE

Regarding the hourly rates charged, the Second Circuit has held that "[t]he reasonable hourly rate is the rate a paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n. v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2007).  Moreover, current rates rather than historical rates should be applied in order to compensate for the delay in payment. *LeBlanc-Sternberg*, 143 F.3d at 764; *Patrolmen's Benevolent Assn.*, 2003 WL 21782675, at *3; *Davis v. New York City Housing Auth.*, 2002 WL 31748586, at *2 (S.D.N.Y. Dec. 6, 2002); Doe, 2016 WL 335867 at *4 fn.4 (S.D.N.Y. Jan. 28, 2016).

The hourly rates specified below are reasonable because: (i) they represent HPC's historical hourly rates in effect in December 2019[30] and are consistent with those previously approved by this Court, with a mere 3.4% per year or less increase over the last four years (Hiller Aff. ¶_); and (ii) the rates continue to be consistent with, if not less than, those approved for comparable attorneys with similar experience in this Circuit (*see infra*).

## Michael S. Hiller, Esq.

Dimitra requests $750 per hour for the time that Mr. Hiller devoted to the case.  Mr. Hiller is an ERISA specialist with over 28 years of experience. The requested hourly rate of $750 is the rate that Mr. Hiller charged all of his active hourly rate clients (more than 100) until January 1, 2020 when Mr. Hiller's hourly rate (for HPC's other clients) was increased to $795 (Hiller Aff. ¶¶27-28). However, for purposes of this fee application, notwithstanding the case law above awarding legal fees based upon

---

[30]Despite being entitled to *current* hourly rates, HPC used the historical hourly rates in effect in December 2019 to calculate the legal fees.  HPC did not regard it to be appropriate to use its current rates, which were increased in January 2020 immediately prior to Unum's approval of Dimitra's benefits.

*current* rates, the prior rate of $750 (in effect as of December 2019) has been tabulated and charged.

In determining reasonable hourly rates, the Court must consider "the range of rates plaintiff's counsel actually charge their clients.  This is obviously strong evidence of what the market will bear." *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 544 (S.D.N.Y. 2008).[31]

HPC's 100+ active clients paid the requested rate as of December 2019.  Thus, the accepted rate of $750 per hour is "strong evidence" of the reasonableness and appropriateness of Mr. Hiller's hourly rate.  *Id.*  In addition, we emphasize that this Court, on February 3, 2017, awarded undersigned counsel legal fees at a rate of $660 per hour for having prevailed in this action on an interim basis -- specifically, defeating Unum's motion for summary judgment and obtaining the Remand Order, directing reconsideration of Dimitra's LTD Claim subject to instructions (Ex. 3).  That hourly rate was provided as a discount off of the undersigned's full hourly rate at the time, $700.  Over the last three years, Mr. Hiller's hourly rate has increased from $700 to $795 -- four (4%) percent per year.  However, calculating from $660 per hour  -- the rate approved on the last application -- to $750 per hour (Mr. Hiller's hourly rate for most of the period during which the work on our time sheets was recorded) represents an increase of a mere 3.4% per year.  Under HPC's Retainer Agreement with Dimitra, the firm is entitled to raise its rates by up to *10% per year* (the "10% Increase Provision") (Ex. 15).  The 10% Increase Provision is contained in every litigation retainer agreement HPC issues (Hiller Aff. ¶28).[32]  Even so, rather than increasing rates to the maximum of 10% per year, as authorized in the Retainer Agreement, HPC limited the increases to 3.4% per year (for Dimitra and the other clients of HPC).  That 3.4%

[31] *See also Arbor Hill*, 522 F.3d at 186 n.3, 190; *Nunez v. Francis Deli Grocery*, 2015 WL 1963630 at *7 (S.D.N.Y. Apr. 30, 2015) (attorneys' customary hourly rate among factors to be considered in determining lodestar, *quoting Arbor Hill*); *Bazignan v. Team Castle Hill Corp.*, 2015 WL 1000034 at *4 (S.D.N.Y. Mar. 5, 2015) (*accord*); *Magnuson v. Newman*, 2014 WL 3767006 at *1 (S.D.N.Y. July 31, 2014) (*accord*).

[32] For some transactional matters, HPC issues flat-fee retainer agreements, as to which no hourly rates apply. Thus, language pertaining to increases in hourly rates does not appear in those retainer agreements. HPC does not enter into flat-fee litigation retainers.

18

annual increase is actually less than the increases in operating expenses for HPC over the same period (Hiller Aff. ¶27).  In view of the foregoing, we respectfully submit that 3.4% per year rate increases constitute a reasonable adjustment based upon the cost of doing business in New York City.

The requested rate is also commensurate with the rates charged by other attorneys with similar experience (*see* Ex. 18, 2020 Riemer Decl. ¶¶12, 15  and 2016 Riemer Decl. ¶¶12-13, 15, 16 (reflecting that Mr. Hiller's hourly rate is commensurate with, albeit slightly lower than, current and prevailing hourly rates for lawyers of similar experience and reputation)), and less than rates awarded to attorneys in Social Security Disability cases which are significantly less complex than ERISA disability litigation (*see, e.g.*, *Morrison v. Saul*, 2019 WL 6915954, at *3 (S.D.N.Y. Dec. 19, 2019)(finding a reasonable hourly rate at $935.52 and collecting cases where reasonable rates ranged from $838.93/hour to $1,079.72 per hour); *Bate v. Berryhill*, 2020 WL 728784, at *3 (S.D.N.Y. Feb. 13, 2020)(finding a reasonable hourly rate of $1,506.32 and noting a "substantial" number of cases awarded fees in excess of $1,000/hour).[33]

The remaining attorneys and the paralegals of HPC are, as shown in the Hiller Affidavit, charged at or below (and in several instances, substantially below) prevailing standard market rates for comparable professionals and were charged for all of HPC's clients during the relevant periods.  *See* Hiller Affidavit, ¶¶44-63.  *See also*, Ex. 18, 2020 Riemer Decl., ¶12.  As also shown in the Hiller Affidavit, HPC has already voluntarily reduced its charges by over $36,000.  Accordingly, the legal fees requested are reasonable and appropriate.  *See* Hiller Affidavit,  ¶¶75-76.

### B.      THE NUMBER OF HOURS EXPENDED BY HPC IS REASONABLE

In calculating the initial lodestar, the Court determines the number of hours reasonably spent representing the plaintiff and excludes any hours that were excessive, redundant, or otherwise unnecessary. *Quatarino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999).  The number of hours

---

[33]Although the lodestar method is not used to calculate legal fees in Social Security cases, courts nonetheless routinely have found hourly rates in excess of $1,000 to be reasonable. *Id.*

expended by HPC herein is reasonable.  In order to assist the Court in determining the number of

reasonable hours expended, we respectfully refer Your Honor to the attorney fee chart (the "Attorney

Fee Chart") found at ¶65 of the Hiller Affidavit submitted herewith.  This chart documents the number

of billable hours expended for each task performed.  As the Attorney Fee Chart and the HPC Invoices

show, the Post-Remand work performed by HPC on Dimitra's behalf was substantial and was a

principal basis for the successful outcome of this case.  Without limitation, the work performed by

counsel following the Court's Remand Order includes:

- Review and analysis of the Remand Order, reflecting successful defeat of Unum's Cross-Motion for Summary Judgment, and the partial grant of Dimitra's Motion;
- Preparation of a Legal Fee Application (2016), and review of Unum's opposition;
- Preparation of Reply to Unum's opposition to the Legal Fee Application;
- Assembly of records, reports and other data and materials for submission of Dimitra's Post-Remand Claim;
- Preparation of the Post-Remand Claim for submission to Unum;
- Review of Unum's Determination, denying the Post-Remand Claim;
- Review of the new, 2,124-page Administrative Record;
- Litigation of the scope/procedural rules pertaining to the Post-Remand Appeal process;
- Assembly of records, reports and other data and materials for submission of Dimitra's Post-Remand Appeal;
- Performance of medical and legal research for the Post-Remand Appeal;
- Procurement and facilitation of Dimitra's 2-day CPET examination;
- Arrangement for, and collection and assembly of, post-CPET records and reports;
- Preparation of a 65-page, single-spaced Post-Remand Appeal;
- Successful opposition to Unum's Motion to Dismiss and Unum's demand for a declaration that the Post-Remand Appeal was untimely;
- Successful opposition to Unum's request for a four-month extension of its deadline to respond to the Post-Remand Appeal;
- Successful opposition to Unum's demand for 10-years of medical records;
- Successful opposition to Unum's 11th-hour demand for an ME;
- Successful opposition to Unum's improper demand for privileged and irrelevant mental health records and sessions notes; and
- Review and analysis of Unum's Benefits Award, reversing the previous denials and granting Dimitra full LTD Benefits retroactively to November 30, 2010.

As demonstrated by the HPC Invoice (Ex. 19), HPC voluntarily "no charged" 106.55 hours

resulting in a reduction of its claim for attorneys' fees in the amount of $36,171.50.  As such, no further

reduction is needed.  This voluntary reduction more than offsets any possible inefficiency and

duplication of efforts in the instant action.

**POINT III.   THE COURT SHOULD AWARD $2,694.95 IN COSTS**

Plaintiffs are entitled to recover all reasonable out-of-pocket expenses incurred by the attorney which are normally charged to fee-paying clients. *Algie v. RCA Global Communications, Inc.*, 891 F. Supp. 875, 898 (S.D.N.Y. 1994), *aff'd.*, 60 F.3d 956 (2d. Cir. 1995).  Dimitra seeks $2,694.95 in costs, which represents some, but not all, of the out-of-pocket  expenses expended on the case (Ex. 19).  Frequent out-of-pocket expenses for postage and miscellaneous copying were not even charged herein.  All of those costs were necessarily incurred, and Dimitra should be awarded her costs in full.

**POINT IV.   DIMITRA IS ENTITLED TO PRE-JUDGMENT INTEREST
          AT 9% FOR A TOTAL OF $396,462.66**

Dimitra requests that this Court order Unum to pay pre-judgment interest at the New York statutory interest rate of 9% retroactive to November 30, 2010 (when benefits should have been paid). *See* CPLR §5004.  Using the mid-point between November 30, 2010 and March 26, 2020 (the date Dimitra received Unum's retroactive benefits check), pre-judgment interest totals $396,462.66.

The Second Circuit has held that ERISA "authoriz[es] the district court to award prejudgment interest to a successful ERISA claimant" noting that "a monetary award does *not* fully compensate for injury unless it includes an interest component." *Slupinski*, 554 F.3d at 53-54 (quoting *Kansas v. Colorado*, 533 U.S. 1, 10 (2001)) (internal quotation marks omitted) (emphasis in original).  Significantly, Dimitra is entitled to pre-judgment interest even where the insurer voluntarily agrees to pay LTD benefits following an administrative proceeding during a court-ordered remand.  *See Barrett v. Hartford Life and Acc. Ins. Co.*, 2012 WL 6929143, at *2 (S.D.N.Y. Nov. 9, 2012); *see also Taaffe v. Life Ins. Co. of N. Am.*, 769 F. Supp. 2d 530, 537 (S.D.N.Y. 2011) (prejudgment interest granted from inception of the disability, despite the plan administrator voluntarily paid LTD Benefits following commencement of the action to recover such benefits because, "although a court never formally decided that Taaffe was 'disabled'

21

within the meaning of the Plan (and therefore entitled to LTD benefits), LINA admitted that Taaffe was disabled as of February 27, 2008, and should have begun receiving LTD benefits on August 27, 2008").

"[T]he question of whether or not to award prejudgment interest is ordinarily left to the discretion of the district court." *Jones v. UNUM Life Ins. Co. of Am.*, 223 F.3d 130, 139 (2d Cir. 2000). In exercising this discretion, the district court must weigh: "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *Id.* (*quoting SEC v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1476 (2d Cir. 1996)).

As the Second Circuit explained in *Jones*:

> The suitability of that postjudgment rate for an award of prejudgment interest will depend on the circumstances of the individual case, and the court need not limit the award of prejudgment interest to the rate at which the injured party would have lent money to the government. The court may, for example, consider whether the plaintiff would have invested the money at some higher rate, or it may take into account the rate of interest the defendant would have had to pay to borrow the money it withheld from the plaintiff (*Jones*, 223 F.3d at 139 (internal citations omitted)).

Further, as the Court in *Alfano v. CIGNA Life Ins. Co.* stated:

> In making [a prejudgment interest] assessment, the Court is mindful that "[l]ike an award of attorney's fees for a successful ERISA claim by an employee benefit plan participant, 'prejudgment interest is an element of [the plaintiff's] complete compensation.'" In addition, prejudgment interest may be required to prevent a defendant from enjoying a windfall as a result of its wrongdoing ....
>
> [W]hile there is no applicable federal statute establishing a prejudgment interest rate, New York has adopted a statutory prejudgment interest rate of 9%, thus making an objective legislative judgment that 9% is an appropriate rate. Although [defendant] argues that the Treasury rate constitutes a more appropriate rate, there is no reason to think that that rate more accurately captures the time value of money in New York, or the true loss to plaintiff, particularly given the New York State Legislature's determination otherwise.[34]

Consistent with Dimitra's request, courts within this Circuit frequently award a prejudgment

---

[34] *Alfano v. CIGNA Life Ins. Co.*, 2009 WL 890626, at *6-7 (S.D.N.Y. Apr. 2, 2009) (citations omitted).

interest rate at 9%.  *See e.g.*, *Severstal Wheeling, Inc. Ret. Comm. v. WPN Corp.*, 119 F. Supp. 3d 240, 269-270

(S.D.N.Y. Aug. 10, 2015); *Rood v. N.Y.S. Teamsters Conference Pension & Ret. Fund*, 39 F. Supp. 3d 241, 254

(N.D.N.Y. Aug. 20, 2014); *Levitian v. Sun Life Health and Ins. Co.*, 2013 WL 3829623, at *12 (S.D.N.Y.

July 24, 2013) (noting "it would be inequitable" to use the unrealistically low interest rate urged by Sun

Life); *Barbu v. Life Ins. Co. Of North America*, 2015 WL 778325, at *6-7 (E.D.N.Y. Feb. 24, 2015);

*Bricklayers Ins. & Welfare Fund v. Champion Constr. Corp.*, 2013 WL 4547513, at *5 (E.D.N.Y. June 13,

2013), Report & Recommendation adopted in relevant part, 2013 WL 4547499, at *3 (E.D.N.Y. Aug.

28, 2013); *Taaffe,* 769 F. Supp. 2d at 538-39; *Local Union No. 97, IBEW v. NRG Energy, Inc.*, 2009 WL

1310565, at *7 (N.D.N.Y. May 8, 2009); *Alfano,* 2009 2009 WL 890626, at *7; *Morgenthaler v. First Unum

Life Ins. Co.*, 2006 WL 2463656, at *4 (S.D.N.Y. Aug. 22, 2006)(finding that the 9% statutory rate "is fair

and customary in New York, the place of contracting and where Plaintiff worked; is consistent with the

remedial purpose of ERISA; and serves the need fully to compensate Plaintiff for the money withheld

from him"); *Sheehan v. Metropolitan Life Ins. Co.*, 2005 WL 1020874, at *3 (S.D.N.Y. Apr. 29, 2005)(finding

a "9% interest--the rate of interest [Plaintiff] would have paid to borrow money--more compelling than

defendant's assertion of 2.5%--the rate he would have lent money to the government").[35]

Here, the particular circumstances warrant the application of an interest rate of at least 9%.

From November 2010 to March 26, 2020 (when Unum belatedly paid Dimitra's back LTD Benefits

totaling $944,420.16), Unum had the full benefit of the monies it had withheld from Dimitra for more

than nine years.  And those monies, as now confirmed by Unum, were wrongfully withheld.  During

that period, Unum was able to use the monies comprising Dimitra's LTD Benefits and invest them (with

---

[35]While cases within the 2d Circuit have also awarded less than 9% interest, as discussed below, an
interest rate of at least 9% is warranted in this case due to the substantial profit that Unum earned on
Dimitra's LTD Benefits while wrongfully withholding them from her.  As further reflected below, a 9%
interest rate would not provide a windfall to Dimitra and would actually provide her with less of a return than
she would have earned during the same period by investing in a simple index fund.

the other monies in its accounts) for its own benefit.  Unum's average profit during that period (2010 to 2020) was 9.76% per year (Ex. 20), which is in excess of New York's prejudgment interest rate of 9%.

It is well established that defendants should never profit from or otherwise be rewarded for their wrongdoing.[36]  Because Unum did not grant Dimitra's LTD Claim in November 2010, Unum was not required to establish a reserve for the payment of her LTD Benefits.  Instead, Unum made a 9.76% average yearly profit on Dimitra's monies.  To suggest that Dimitra receive any amount less than the pre-judgment rate set by New York State would confer *Unum* with a windfall for wrongfully withholding Dimitra's Benefits and incentivize Unum to continue its practice of denying meritorious claims.

Furthermore, had the funds been paid to Dimitra in a timely fashion, she might have generated an even better return on investment with her LTD Benefits than did Unum.  The S&P 500 during the period that Unum was investing Dimitra's LTD Benefits for its own profit grew at a rate of 13.64% per year (Ex. 21).  Had Unum timely paid benefits, Dimitra could have invested the money at a higher rate of return than either the 9.76% Unum pocketed at her expense or the 9% requested hereby.  Dimitra's request here -- 9% interest -- constitutes a fair outcome that would allow her to recover some, but not all, of the time-value of her money, while at the same time, allowing Unum to retain some of the profit it earned at Dimitra's expense.  Thus, Dimitra's request of 9% interest is more than reasonable.[37]

---

[36]*See Alfano*, 2009 WL 890626, at *6-7; *Dunnigan v. Metropolitan Life. Ins. Co.*, 277 F.3d 223, 229 (2d Cir. 2002) (stating "When benefits are paid only after the date on which the beneficiary was entitled to receive them under the terms of the plan, the beneficiary has not received the full value of what was promised and, to the same degree, the plan has realized an unjust enrichment (assuming the lateness was unjustified). An award of interest in such circumstances serves as an equitable make-whole remedy"); *Fotta v. Trustees of the United Mine Workers*, 165 F.3d 209, 213 (3d Cir.1998).

[37]We expect Unum to urge the Court to adopt a 4% interest rate or lower.  However, we could not find any case in which an interest rate at that level was ever granted under circumstances in which the evidence confirmed that such an interest rate would allow the corporate wrongdoer, not only to profit from its own wrongdoing, but to generate that profit at the expense of the plan beneficiary whose time value of money is substantially less than the amount the corporate wrongdoer would receive.  Again, we emphasize Unum's return on investment during this period was 9.76%.  Thus, limiting Dimitra's interest to 4% or less would allow Unum to profit substantially from its wrongful denials of Dimitra's Claim and encourage Unum to continue rendering determinations based upon the same arbitrary and capricious factors which led to the

Dimitra received her retroactive LTD benefits on March 26, 2020 in the amount of $944,420.16. Calculating interest at 9% using the midpoint between November 30, 2010 and March 26, 2020 (3,405 Days), Dimitra would be entitled to $232.87 per day multiplied by 1,702.5 (the midpoint) resulting in a total of $396,462.41 in pre-judgment interest. *See Doe v. Unum Life Insurance Company of America*, 2016 WL 749886 (S.D.N.Y. Feb. 23, 2016) (noting that courts routinely calculate prejudgment interest from a midpoint date in the delinquency period); *Dunda v. Aetna Life Insurance Company*, 2016 WL 4831962 (W.D.N.Y. Sept. 15, 2016).[38]

## CONCLUSION

For the reasons set forth herein, the Court should award Dimitra (1) attorneys' fees under ERISA §502(g)(1) in the amount of $337,785.50, (2) costs in the amount of $2,694.95, and (3) pre-judgment interest in the amount of $396,462.66.

Dated:  New York, New York
        April 30, 2020

                                        **HILLER, PC**
                                        *Attorneys for Plaintiff*
                                        641 Lexington Avenue, 29th Floor
                                        New York, New York 10022
                                        (212) 319-4000

                        By:  _____
                                        Michael S. Hiller (MH 9871)
                                        Paul M. Kampfer (PK 9186)

---

nearly ten-year delay in Dimitra's receipt of LTD Benefits herein.

[38] We also anticipate that Unum will take the absurd position that interest would be payable only since November 12, 2019, when the Post-Remand Appeal was filed. According to opposing counsel, Unum allegedly did not receive proof of disability until that submission. However, such an argument presupposes that Unum fairly adjudicated the original request for benefits in 2010 – an argument this Court, in its 2016 Remand Order, fully rejected. Furthermore, the evidence confirms that the proof of Dimitra's disability, prior to November 2019, was overwhelming, but that Unum cherry-picked through the records, de-emphasizing the proof establishing Dimitra's inability to work, while exalting and distorting isolated instances in which she attempted activity on the advice of her physicians (Hiller Affidavit, ¶¶12, 82). Nonetheless, even assuming *arguendo* that Unum were right – and it isn't – opposing counsel's presumed argument would ask this Court to grant <u>Unum</u> a windfall, inasmuch as Unum received the benefit of monies belonging to Dimitra over the last nine years. In effect, Unum would be asking this Court to allow Unum to treat Dimitra as "the bank" for an unsecured $944,460.66 nine-year, interest-free loan. Respectfully, there is no support for such an outcome.