UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
DIMOPOULOU,

                      Plaintiff,

         v.

FIRST UNUM LIFE INSURANCE COMPANY, ET AL.,

                      Defendants.
------------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: __2/5/2021__

1: 13-cv-07159-ALC
OPINION AND ORDER

ANDREW L. CARTER, JR., District Judge:

      Plaintiff Dimitra Dimopoulou brought suit under 29 U.S.C. § 1132 of the Employee Retirement Income Security Act ("ERISA"), alleging that Defendant First Unum Life Insurance Company ("Unum") wrongfully denied her disability benefits under the terms of a long-term disability ("LTD") plan.[1] By a January 25, 2016 Memorandum & Order, the Court denied the Parties' cross-motions for summary judgment and remanded the case to Unum for further administrative review. The Court retained jurisdiction during the remand, and, relevant here, issued an interim award of attorneys' fees ("Interim Fee Award") for $223,361.00 in attorneys' fees and $5,868.08 in costs. *Dimopoulou v. First Unum Life Ins. Co.*, No. 1:13-cv-7159 (ALC), 2017 WL 464430, 2017 U.S. Dist. LEXIS 15944 at *11-12 (S.D.N.Y. Feb. 3, 2017). While this matter was on remand, Unum agreed to pay Plaintiff's benefit retroactive to November 30, 2010, when Plaintiff initially filed for LTD. The Court now considers a motion for a final award of legal

---

[1] In light of the prior decisions issued in this matter, familiarity with the underlying facts, and procedural history is assumed. In short, Plaintiff was an executive at a private equity firm, Blackstone, until she developed a virus, which developed into Chronic Fatigue Syndrome, Fibromyalgia and an assortment of other disabling conditions. Debilitated by these conditions, in February 2010, Plaintiff applied for and was granted disability benefits by her disability insurer and plan administrator, Unum. However, Plaintiff was denied long-term disability benefits. Plaintiff filed an administrative appeal, which was denied. She then initiated the instant lawsuit.

1

fees, costs, and prejudgment interest. ECF No. 162. For the reasons that follow, the motion is GRANTED, with modifications.[2]

## LEGAL STANDARD

"In any action under [ERISA]. . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). An ERISA "fees claimant must show 'some degree of success on the merits' before a court may award attorney's fees." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010). "[W]hether a plaintiff has obtained some degree of success on the merits is the sole factor that a court *must* consider in exercising its discretion." *Donachie v. Liberty Life Assur. Co. of Boston*, 745 F.3d 41, 46 (2d Cir. 2014). Having determined that a plaintiff has achieved some degree of success on the merits, a court may, but need not, consider other factors in determining whether to award attorneys' fees. Under those factors, known in this Circuit as the *Chambless* factors, a court may consider (1) the degree of opposing parties' culpability or bad faith; (2) the ability of opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 872 (2d Cir. 1987).

## DISCUSSION

I. Some Degree of Success on the Merits

---

[2] Defendant filed a motion to strike the Reply Affidavit of Michael S. Hiller. ECF No. 181. The Court DENIES this motion because the Court's resolution of the instant fee application does not rely on the Reply Affidavit.

The gateway question for the Court is whether Plaintiff has achieved "some degree of success on the merits", such that the Court may award fees and costs. In considering and granting the Interim Fee Award, the Court concluded that its prior remand did constitute "some degree of success". *Dimopoulou*, 2017 U.S. Dist. LEXIS 15944, at *3. Since that time, the Court has retained jurisdiction over this action during the adjudication of the remand to Unum.

Unum urges the Court to conclude that Dimopoulou did not have "some degree of success" because "[t]he remand was a new and separate administrative proceeding". Opp. at 7. According to Unum, the remand "end[ed] the case without substantive judicial review of new evidence or a judgment [and] is most closely analogous to pre-litigation administrative proceedings, the fees for which are not recoverable." Opp. at 7. This argument runs headlong into Second Circuit precedent. Specifically, *Peterson v. Cont'l Cas. Co*. holds that "[t]he fact that a court orders additional fact finding or proceedings to occur at the administrative level does not alter the fact that those proceedings are part of the 'action' as defined by ERISA." 282 F.3d 112, 122 (2d Cir. 2002). Instead, "[w]here the administrative proceedings are ordered by the district court and where that court retains jurisdiction over the action during the pendency of the administrative proceedings, [] ERISA authorizes the award of associated costs." *Id.* In light of *Peterson*, Unum's argument fails.

Unum also argues that the Court should exercise its discretion to deny the motion for fees wholesale. But Unum does not offer any principled reason for the Court to do so. For example, Unum argues the Court should deny any award of fees because the fees requested are "grossly out of proportion to the work performed". Opp. at 10. To the degree this is true, this seems to counsel for a reduction in the requested fees, not an outright denial of any award. Unum also argues that the Court should exercise its discretion to deny an award of fees because no judgment was entered against Unum. This is unpersuasive as courts routinely award fees in cases that have settled.

*Juliano v. Hmo of N.J.*, 93 Civ. 8960(KMW), 2001 U.S. Dist. LEXIS 17140, at *3 (S.D.N.Y. Aug. 28, 2001) (collecting cases).

The Court concludes, as it did on the Interim Fee Award, that its remand constitutes some degree of success on the merits. The Court also declines to consider the *Chambless* factors, as it did for the Interim Fee Award, and instead turns to the details of Plaintiff's request.

II. Attorneys' Fees

Having concluded that some award of fees is merited, the Court now considers the reasonableness of the hourly rates requested by Plaintiff and of the hours expended by counsel. Plaintiff seeks an award of attorneys' fees in the amount of $337,875.50.

Traditionally, to determine a reasonable attorney's fee, a court first calculates a "lodestar figure," which is determined by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate. *See Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997). The lodestar creates a "presumptively reasonable fee" that roughly approximates the fee that the prevailing attorney would have received from billing a paying client on an hourly basis in a comparable case. *Millea v. Metro—N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008).

A. Reasonable Hourly Rate

A fee applicant bears the burden of "produc[ing] satisfactory evidence" that the requested rates are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Pearson Educ., Inc. v. Vergara*, No. 09 Civ. 6832 (JGK) (KNF), 2010 WL 3744033, 2010 U.S. Dist. LEXIS 101597 at *17 (S.D.N.Y. Sept. 27, 2010) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). In exercising its "considerable discretion" as to attorneys' reasonable hourly billing rates, a court should determine

the rates that a "paying client would be willing to pay," "bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190.

For the Interim Fee Award, the Court considered the relevant law and local market, and approved an hourly rate of $660 for Plaintiff's counsel, Michael Hiller, the lead attorney on the case, and an ERISA specialist with over 25 years of experience. *Dimopoulou*, 2017 U.S. Dist. LEXIS 15944, at *7-8. The Court also approved the following rates: $570 per hour for senior attorney David Rubinstein; $450 for Lauren Rudick, a former associate with twelve years of litigation experience, and Matthew Berman, an experienced senior associate; rates of $285 per hour for 2014 and $300 per hour for 2015 for associate Andrew Davis, and $125 per hour to $190 per hour for paralegal and non-attorney support, depending on seniority and experience. *Id*.

In this application, Plaintiff requests an hourly rate of $750 for Hiller. Hiller attests that since 2017, his rate has increased approximately 4% per year from $700 to $795. ECF No. Hiller Decl. ECF No. 163 at ¶ 27. Both his rate previously approved by the Court, and the rate request here are discounts on "sticker price". For Senior Counsel Paul Kampfer, who has over fourteen years of experience, Plaintiff seeks a rate of $500 per hour. For Associate Fatima Afia, Plaintiff seeks an hourly rate of $325 per hour. For associate Lara Weissman, Plaintiff seeks an hourly rate of $285. For Senior Associate Jason Zakai, Plaintiff requests an hourly rate of $450 per hour. For four paralegals, Plaintiff seeks $135, $135, $150, and $175 per hour.

Defendant only disputes the $750 hourly rate requested for Hiller. Plaintiff argues that this rate is warranted by Hiller's 28 years of experience; is reasonable because Hiller has charged this rate to clients since December 2019; constitutes a reasonable increase of 3.4% per year over the rate approved by the Court in the Interim Fee Award; and is commensurate with fees for similarly

experienced attorneys, as shown by the affidavit of Scott Reimer Esq., who also ligates ERISA matters in this district. Plaintiff also relies on two social security cases where hourly rates higher than $750 were approved. *See Morrison v. Saul*, 2019 WL 6915954, at *3 (S.D.N.Y. Dec. 19, 2019) (finding a reasonable hourly rate at $935.52 and collecting cases where reasonable rates ranged from $838.93/ hour to $1,079.72 per hour); *Bate v. Berryhill*, 2020 WL 728784, at *3 (S.D.N.Y. Feb. 13, 2020) (finding a reasonable hourly rate of $1,506.32 and noting that a "substantial" number of cases awarded fees in excess of $1,000 per hour). Defendant counters that the yearly increase in hourly fee by Plaintiff's counsel is unreasonable and that the Reimer Affidavit is not competent evidence to support a $750 rate. In response, Plaintiff contends that the increase in rate is commensurate with inflation for wages and salaries in New York City.

The Court concludes that Plaintiff has not carried her burden to show $750 is a reasonable hourly rate for Hiller. Though Plaintiff's counsel has pointed to its own practice as justification for the rate, it has failed to show that $750 is commensurate with the market. The Reimer Affidavit is not persuasive that $750 is a reasonable rate because, as Defendant points out, Mr. Reimers's request for a similar rate was recently denied by a Court in the Eastern District. Opp. at 14. Moreover, the only cases Plaintiff cites to justify a rate of $750 are social security cases. These cases are inapposite. Unlike this case, those are contingency fee cases where a *de facto* hourly rate has been backed out from the contingency fee and the hours worked. The resulting *de facto* hourly rate may therefore be much higher than the market would bear. Indeed, "Courts often permit [] higher-than-usual hourly rates for Social Security cases due to the uncertain nature of contingency cases and to encourage representation of Social Security litigants, who often lack the resources to independently retain counsel." *Morrison*, 2019 WL 6915954, at *2. These social security cases are therefore not helpful in determining a reasonable market rate here.

Having concluded that Plaintiff has not carried her burden to show $750 is a reasonable hourly fee for Hiller, the Court reduces Hiller's hourly rate to $675, which is in line with the hourly rate previously approved in the Interim Fee Award. The Court approves the rates for the other counsel and support staff to which Defendant has not objected, which the Court deems reasonable.

Taking into account the downward adjustment in Hiller's hourly fee, the total possible fee award is reduced to $323,845.50.

B. Reasonableness of Hours Expended

Next the Court considers whether the hours expended on behalf of Plaintiff are reasonable. "In determining the number of hours reasonably expended for purposes of calculating the lodestar, the district court should exclude excessive, redundant, or otherwise unnecessary hours." *S.J. v. N.Y.C. Dep't of Educ.*, No. 1:20-cv-01922 (LGS) (SDA), 2020 WL 6151112, 2020 U.S. Dist. LEXIS 194258, at *11 (S.D.N.Y. Oct. 20, 2020) (citing *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)). "In addition, a failure to delegate work to junior, less expensive attorneys may be grounds for reducing an award of attorney's fees." *Winkler v. Metro. Life Ins. Co.*, 2006 WL 2347826, 2006 U.S. Dist. LEXIS 56464, at *7 (S.D.N.Y. Aug. 10, 2006) (citing *Rosso v. Pi Mgmt. Assocs.*, L.L.C., No. 02 Civ. 1702, 2006 WL 1227671, 2006 U.S. Dist. LEXIS 27127 at *2 (S.D.N.Y. May 3, 2006)). In reducing the total number of hours awarded, a "district court may exercise its discretion and use a percentage deduction as a practical means of trimming fat from a fee application." *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96 (2d Cir. 2006) (internal quotations omitted); *see e.g.*, *Levitian v. Sun Life & Health Ins. Co. (U.S.)*, 2013 WL 3829623, 2013 U.S. Dist. LEXIS 105686, at *27 (S.D.N.Y. July 24, 2013) (30% reduction); *Lide v. Abbott House*, No. 05 Civ. 3790 (SAS), 2008 U.S. Dist. LEXIS

13826, 2008 WL 495304, at *1-2 (S.D.N.Y. Feb. 25, 2008) (30% reduction); *Winkler v. Metro. Life Ins. Co.*, 2006 U.S. Dist. LEXIS 56464, at *7 (S.D.N.Y. Aug. 10, 2006) (20% reduction).

The Court's review of Plaintiff's time entries indicates that a percentage reduction is warranted to trim excessive hours. Among the hours the Court considers unreasonable are the 127.95 hours spent on this fee award application—which include more than 45 hours of time by Hiller, a partner. ECF No. 163 at 28. This time is especially unreasonable given that there is overlap between the instant motion and the motion for the Interim Fee Award, for which approximately 80 hours were expended. Hiller billed nearly 29 hours for the motion for the Interim Fee Award. The aggregate time spent on the two fee award applications is excessive.

The detailed time entries submitted by Plaintiff also show that certain tasks, such as research, reviewing cites, and certain drafting tasks were performed by Hiller or Kampfer, the most senior attorneys. *See generally* ECF No. 162-23. These could have been delegated to junior attorneys. A reduction of hours is also warranted because many of the entries themselves are vague, limiting the Court's ability to determine if the amount of time spent by counsel was warranted. For example, the vast majority of entries for research, whether by Hiller, Kampfer, or more junior associates, do not describe the topics being researched. *See generally* ECF No. 162-23.

The Court is aware that Plaintiff's counsel voluntarily "no charged" 106.55 hours, resulting in a reduction of its fees by $36,171.50. Mot. at 30. However, that does not address the unreasonably expended hours indicated above. Still, the reduction proposed by Defendant, 50% to 75%, is too large. The Court concludes that a 20% reduction is warranted in light of the concerns outlined above. With an across the board reduction of 20%, the total fee award is $259,076.40

   III.   Costs

Plaintiff requests $2,694.95 in costs, which are passed on at cost without profit. Defendant has not objected to the award of costs. The Court therefore awards costs in the amount of $2,694.95.

IV.     Pre-judgment Interest

The Court now turns to whether to award pre-judgment interest to Dimopoulou. The Second Circuit has "interpreted ERISA as authorizing the district court to award prejudgment interest to a successful ERISA claimant, and that decision, like the decision to award attorney's fees, is committed to the sound discretion of the district court." *Slupinski v. First Unum Life Ins. Co.*, 554 F.3d 38, 53-54 (2d Cir. 2009). In exercising such discretion, the district court considers "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) . . . fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *Frommert v. Conkright*, 913 F.3d 101, 109 (2d Cir. 2019) (*Jones v. UNUM Life Ins. Co. of Am.*, 223 F.3d 130, 139 (2d Cir. 2000)). "Like an award of attorney's fees for a successful ERISA claim by an employee benefit plan participant, prejudgment interest is an element of [the plaintiff's] complete compensation." *Slupinksi*, 554 F.3d 53-54 (quoting *Jones v. UNUM*, 223 F.3d at 139) (internal quotes omitted). "In addition, an award of prejudgment interest may be needed in order to ensure that the defendant not enjoy a windfall as a result of its wrongdoing." *Id.* However, the rate "must not result in over-compensation of the plaintiff". *Frommert*, 913 F.3d at 109 (citing *Wickham Contracting Co. v. Local Union No. 3, IBEW*, 955 F.2d 831, 834 (2d Cir. 1992)).

Plaintiff requests pre-judgment interest retroactive to November 30, 2010 through March 26, 2020 (the date Dimitra received Unum's retroactive benefits check), at the New York statutory interest rate of 9%, totaling $396,462.66.

9

Defendant argues that interest is unavailable because Plaintiff never won a judgment; instead, Defendant decided on its own to pay Plaintiff benefits. Alternatively, Defendant argues that Plaintiff was not entitled to benefits until November 2019, when she submitted the evidence upon which Defendant purports to have ultimately approved her LTD. Defendant further argues that the delay between its receipt of the evidence in November 2019 and its determination in February 2020 was justified, so no interest is payable prior to February 2020. If the Court awards interest, Defendant urges the Court that interest in the amount of the prime rate, 3.25%, would be equitable.

The Court finds most of Defendant's arguments against an award of pre-judgment interest unavailing. As a threshold matter, the Court rejects Defendant's argument that a lack of a judgment means Plaintiff may not be awarded pre-judgment interest. "The Second Circuit [] implicitly rejected this argument in *Dunnigan* [*v. Metro. Life Ins. Co.*] when it allowed for interest payments where 'benefits [were] awarded after internal administrative review and not through litigation.'" *Barrett v. Hartford Life & Accident Ins. Co.*, 2012 U.S. Dist. LEXIS 176362, at *5 (S.D.N.Y. Nov. 8, 2012) (citing *Dunnigan v. Metro. Life Ins. Co.*, 277 F.3d 223, 225 (2d Cir. 2002)). Nor is the Court persuaded by Defendant's argument that Plaintiff should be deemed to have been eligible as of the time sufficient evidence was submitted. Defendant has agreed to pay benefits retroactive to November 30, 2010. Consequently, awarding interest from that time would fully compensate Plaintiff for the benefit to which she is undisputedly entitled, be fair and equitable, and encourage the remedial purpose of ERISA. Defendant presents no caselaw to support pegging Plaintiff's eligibility to the date Defendant alleges it had sufficient evidence to determine her eligibility.

To the degree Defendant contends that Plaintiff is not due interest for delaying proceedings, this argument fails. The Second Circuit has indicated that denying prejudgment interest may be

warranted "if the record revealed that the plaintiff had engaged in tactics that were dilatory, *i.e.,* 'for the purpose of gaining time or deferring decision or action.'" *Slupinski*, 554 F.3d at 54. However, Defendant has made no showing that Plaintiff engaged in any tactics for the purpose of gaining time or deferring decision. Nor is there any obvious reason it would benefit Plaintiff to delay. For these reasons, the Court deems it appropriate to follow the usual practice in ERISA cases and "calculate prejudgment interest from a midpoint date in the delinquency period." *Taaffe v. Life Ins. Co. of N. Am.*, 769 F. Supp. 2d 530, 538 (S.D.N.Y. 2011) (collecting cases).

However, the Court does agree with Defendant that an award of 9% interest would not be equitable and represent a windfall for Plaintiff. "[T]he Court finds that assessing a pre-judgment interest rate at the prime rate level will adequately and objectively serve as compensation to [Dimopoulou] for the lost use of money wrongly withheld without penaliz[ing] the defendant". *Spears v. Liberty Life Assurance Co.*, No. 3:11-cv-1807 (VLB), 2020 U.S. Dist. LEXIS 83296, at *17 (D. Conn. May 12, 2020) (collecting case in which prime rate was applied). The Court therefore orders interest at the prime rate, 3.25%.

The time between November 30, 2010 and March 26, 2020 is a 3405-day period, with midpoint at approximately July 29, 2015. Multiplying the amount Defendant owed ($944,420.16) by the annual interest rate of 3.25%, and dividing that amount ($30,693.66) by 365, the daily rate is $84.09. Accordingly, Plaintiff is owed $143,166.98 ($84.09 x 1702.5) in prejudgment interest.

## CONCLUSION

For the reasons above, the Court awards Plaintiff Dimopoulou $259,076.40 in attorneys' fees, $2,694.95 in costs, and $143,166.98 in prejudgment interest. The Clerk of Court is respectfully directed to enter judgment consistent with this Opinion.

SO ORDERED.
Dated: February 5, 2021
     New York, New York

                                                                      _____
                                                                       ANDREW L. CARTER, JR.
                                                                       United States District Judge

12